Case 7:04-cr-01065-CM  Document 101  Filed 07/02/24  Page 1 of 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

PAUL RYAN DOUGLAS,

          Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/2/24

04-CR-1065 (CM)

### ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE OR REDUCTION OF SENTENCE

McMahon, J.:

    Paul Ryan Douglas is currently serving a life sentence for the brutal murder of Milton Moran, Jr., an automated-teller-machine repair technician, during a botched attempt to steal money from a bank ATM.

    In a *pro se* motion filed on January 3, 2023, Douglas asks the Court to grant him "compassionate release and/or reduction in sentence to time served" based on "the combination of his serious health conditions, Covid-19 pandemic, harsh prison conditions and severity of sentence." (Dkt. 92 at 1). On January 9, 2023, Douglas filed additional documents in support of his motion. (Dkt. 93).

    On January 11, 2023, this Court appointed Calvin H. Scholar, Esq., to represent Douglas in connection with his compassionate release motion. (Dkt. 94). On March 26, 2024, Mr. Scholar filed a letter motion arguing that this Court should find extraordinary and compelling reasons warranting Douglas's release based on Douglas's "medical conditions, elevated risk of harmful consequences should Mr. Douglas contract COVID-19, inadequate medical care, the harshness of

[Douglas's] sentence as a result of the pandemic, and [Douglas's] rehabilitation . . . ." (Dkt. 96 at 7, 10).

On May 28, 2024, the Government file opposition papers addressing the arguments in both Douglas's *pro se* and counseled motions. The Government urges the Court to deny Douglas's motion arguing that he has not met his burden of showing extraordinary and compelling reasons warranting a reduction in his sentence, and even if he had, the Section 3553(a) factors weigh heavily against his release. (Dkt. 98 at 11).

For the reasons set forth herein, as well as in the Government's comprehensive and well-reasoned opposition papers, Douglas's motion is denied.

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then consider whether the defendant has met his burden of establishing "extraordinary and compelling circumstances" warranting release. District courts may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). However, any reduction of a defendant's sentence must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §3582(c)(1)(A). For several years after passage of the First Step Act of 2018, United States Sentencing Guidelines § 1B1.13, entitled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)," was "not 'applicable' to compassionate release motions brought by defendants ...." *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020). But Guidelines § 1B1.13 was amended effective November 1, 2023, and now once again provides guidance for courts adjudicating compassionate release motions. *See United States v. Cromitie*, No. 09 CR 558-01 (CM), 2024 WL 216540, at *4 (S.D.N.Y. Jan. 19, 2024) ("On November 1, 2023, the Sentencing Commission amended the Guidelines so that it now provides guidance for courts in deciding petitions initiated by both BOP and defendants.").

Of course, a court contemplating a defendant's release pursuant to § 3582(c)(1)(A)(i), must first consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they are applicable, and determine whether they counsel for or against release. A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

3

Douglas Has Exhausted his Administrative Remedies in the Bureau of Prisons

Douglas filed a request for a sentence reduction to the Warden at Fort Dix Federal Correctional Institution on January 31, 2021. (Dkt. 98-2). On March 3, 2021, the facility responded by describing the categories of circumstances that the Bureau of Prisons ("BOP") viewed as presenting extraordinary and compelling reasons for a sentence reduction, and advising Douglas that if he still wished to be considered for compassionate release or a reduction in sentence he should resubmit his request with the one specific category into which he believed he fell. (Dkt. 98-3).

Although Douglas did not resubmit his request, the grounds stated in his initial letter to the warden on January 31, 2021, mirror, in general terms, the grounds for compassionate release that he now presses in his present motion before the court: his age, serious health conditions, the threat of COVID-19, his "unjust" conviction, and his demonstrated rehabilitation. Indeed, the Government does not suggest that Douglas's motion should be denied for failure to exhaust.

Accordingly, the Court finds that Douglas has exhausted his administrative remedies with the BOP.

The Motion Before the District Court

Douglas argues that he suffers from various medical conditions: "obesity, cardiac arrythmia, hyperlipidemia, chronic shortness of breath, prostate disorder and prolapse of the bowel." (Dkt. 96 at 4). He argues that "people who have heart conditions, are obese, and were a former smoker, such as Mr. Douglas, are more likely to get extremely sick from COVID-19" and that "Mr. Douglas should not be penalized for his decision not to accept the [COVID-19]

4

vaccine." (Dkt. 96 at 4). Douglas further argues that he is not receiving adequate medical treatment while in BOP custody (Dkt. 96 at 5-6), and that "the Court should consider the relative harshness of Mr. Douglas's sentence as a result of the COVID-19 pandemic." (Dkt. 96 at 6). Finally, Douglas argues that "compassionate release is warranted due to [Douglas's] extraordinary rehabilitation, demonstrated by his participation in numerous programs and classes offered by the BOP and employment with UNICOR." (Dkt. 96 at 6).

For the reasons set forth in the Governments opposition letter (*see* Dkt. 98 at 5-9), there is no basis for finding extraordinary and compelling reasons to reduce Douglas's sentence.

While Douglas has been diagnosed with various illnesses (*see generally*, Dkt. 98, Exh. H (Douglas's Medical Records)), at bottom he is not "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." *See* U.S.S.G. § 1B1.13(b)(1)(C).[1] Douglas medical records demonstrate that BOP health services team has been treating all of Douglas's medical issues. (*See generally*, Exh. H). While Douglas almost certainly would have

---

[1] In addition to previously recognized circumstances such as a defendant suffering from a terminal illness or a serious medical condition, § 1B1.13(b)(1)(A)–(B), the amended Guidelines direct courts to consider whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death, id. § 1B1.13(b)(1)(C), or is held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency declared by the appropriate federal, state, or local authority," where "due to personal health risk factors and custodial status," the defendant is at a greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner." Id. § 1B1.13(b)(1)(D).


access to better medical care if he were out of prison, Douglas's medical records demonstrate that BOP health services is providing him with adequate care. *Id.*

Regarding COVID-19, the ubiquitous availability of the COVID-19 vaccination and treatment options for those who do become infected, has eliminated COVID-19 as a basis for granting compassionate release; even for those persons whom the CDC has in the past said were at risk of suffering a severe outcome if they were to become infected— a category into which Douglas might arguably fall.

That said, the pandemic was extremely hard on prisoners. The necessary steps that the BOP undertook to stop the spread of the deadly virus—lockdowns, suspension of programs, and curtailed visitation—led to increased prisoner isolation and fewer program opportunities for inmates. This created harsher than usual conditions of confinement, which is a factor the court can and does consider in deciding whether extraordinary and compelling circumstances warrant granting compassionate release for a COVID-19 era inmate.

To the extent Douglas is arguing for early release based upon legal arguments attacking his conviction and sentence (claims Douglas asserts in his *pro se motion*, but not in the counseled motion), such claims are not properly raised in his motion for compassionate release. The Second Circuit has stated in no uncertain terms that claims regarding the validity of a conviction, including potential-innocence claims, must be brought in habeas proceedings and cannot be considered in adjudicating compassionate release motions. *United States v. Fernandez*, No. 22-3122-CR, 2024 WL 2926825, at *10 (2d Cir. June 11, 2024).

As for Douglas's rehabilitation while in prison (the Court acknowledges that Douglas has used his time in prison productively and has been a compliant prisoner), rehabilitation alone cannot meet the statutory standard. *See Brooker*, 976 F.3d at 237-38. And as discussed above, Douglas has made no showing of another extraordinary and compelling reason warranting a reduction in his sentence.

In short, Douglas has fallen woefully short of meeting his burden of demonstrating grounds warranting compassionate release.

The § 3553(a) Factors

Even if Douglas had met his threshold burden of demonstrating an "extraordinary and compelling" reason to be considered for compassionate release, the sentencing factors at 18 U.S.C. § 3553(a)—which the Court must consider in connection with a motion for a sentence reduction, *see* 18 U.S.C. § 3582(c)(1)(A)—counsel against a sentence reduction. Principal among those considerations in this case are "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," as well as "to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)–(2).

The nature and circumstances of the offense could hardly be more serious. I reject counsel's argument that Douglas's sentence is overly harsh. The murder of Milton Moran was ruthless and cruel. As the Court said during Douglas's sentencing:

7

> When you are strangled, when your mouth and nose have been taped shut and you cannot breathe, it has to be like being buried alive. He didn't just die, he died in terror. No going gently into the good night for Milton Moran, Junior. Thanks to [Douglas]. . . . And then, and I cannot say it any better than his parents have, you treated him like garbage. Like garbage. You dragged his body from one car to another and tossed it in the trunk and shut the lid as though he were leftover beer cans. In my life I have never heard of such a callous act as that.

(98-1 at 24).

Life imprisonment is the lesser of the two punishments Congress prescribed for Douglas's crime. 18 U.S.C. § 2113(e). And this Court made clear at sentencing that life imprisonment was warranted even if Congress had not mandated that sanction:

> Were my hand not tied by Congress, I would, after considering all of the factors set forth in 18 United States Code, Section 3553A, impose upon you exactly the same sentence that I am going to impose upon you by statutory mandate. Because, as to each of those factors, it is my conclusion that only life in prison will satisfy the mandate of the law, the nature and circumstances of this heinous crime. Your history as an employee of Brinks and your taking advantage of that history or attempting to do so to take what was not yours, the need to deter you and others from ever doing anything like this again, the sufficiency of the punishment as it meets the crime; life for life, Milton Moran's extinguished, yours extinguished as well.

98-1 at 25). Nothing has changed since the Court sentenced Douglas—not Douglas's developing health concerns, not his strides at rehabilitation, not COVID-19—that alters that analysis.

In his reply papers, Douglas counsel argues that it is wrong to overemphasis the seriousness of the offense when considering a defendant's motion for compassionate release:

> Mr. Douglas is a different person today than he was then. During the time Mr. Douglas has been in prison, he has consistently worked to better himself and to

8

> help others. He did this even though he had no realistic prospect of release. By focusing on the crimes that Mr. Douglas committed 20 years ago, and the person he was then, the Government sends a message that there is no place for redemption in this system – that regardless of the efforts prisoners make to improve themselves and help others, it will not change how society views them. That is not a message this Court should endorse. Furthermore, following the Government's argument to its illogical end would mean that no offender could receive a sentence reduction. The changes to the Guidelines and statute cut against the Government's arguments.

((Dkt. 100 at 3). But denying Mr. Douglas's motion today does not mean that there is no place for redemption in our system of justice; there are just some instances where the defendant's crime was so heinous that compassion is not warranted. To make the point, the Court gives Milton Moran's sister the last word:

> Remembering the feeling of my heart feeling like it was ripped out of my chest, falling to my knees in tears finding out he was gone from our lives, that pain never leaves you. I had to watch the life get sucked out of my parents and my niece. My mother losing her first born changed her forever.

(98-10 at 1).

The sentence of life imprisonment continues to be appropriate given the grave nature of Douglas's crime— no reduction is warranted.

The motion for compassionate release is denied.

Dated: July 2, 2023
New York, New York

_____
COLLEEN McMAHON
United States District Judge